0 6  3 9 2

TK     CLOSED

U.S. District Court
Southern District of Florida (Miami)

CIVIL DOCKET FOR CASE #: 06-CV-20709

Ferguson v. Astrazeneca, et al                              Filed: 03/21/06
Assigned to: Judge Adalberto Jordan          Jury demand: Plaintiff
Demand: $0,000                                Nature of Suit:  410
Lead Docket: None                             Jurisdiction: Federal Question
Dkt# in other court: None

Cause: 15:0002  Antitrust Litigation

DOROTHY FERGUSON            Lance August Harke
     plaintiff              FTS 536-8229
                            305-536-8222
                            [COR LD NTC]
                            Sarah Becket Clasby
                            FTS 536-8229
                            [COR LD NTC]
                            Howard Mitchell Bushman
                            FTS 536-8229
                            [COR LD NTC]
                            Harke & Clasby
                            155 S Miami Avenue
                            Suite 600
                            Miami, FL 33130
                            305-536-8220



FILED

JUN 1 6 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

     v.


ASTRAZENECA PHARMACEUTICALS LP
     defendant


ASTRAZENECA LP
     defendant


ASTRAZENECA AB
     defendant


AKTIEBOLAGET HASSLE
     defendant

---------------------------

.    -

INTERNAL USE ONLY: Proceedings include all events.                     TK
1:06cv20709 Ferguson v. Astrazeneca, et al                      CLOSED

3/21/06  1    CLASS ACTION COMPLAINT filed;  FILING FEE $250.00  RECEIPT
              # 937158 ; Magistrate Judge Theodore Klein (sk)
              [Entry date 03/22/06]

3/21/06  2    SUMMONS(ES) issued for Astrazeneca, Astrazeneca LP,
              Astrazeneca AB, Aktiebolaget Hassle (sk)
              [Entry date 03/22/06]

4/10/06  3    UNOPPOSED MOTION by All Defendants (Attorney Chris S.
              Coutroulis) to extend time to respond to complaint (nt)
              [Entry date 04/11/06]

4/14/06  4    ORDER granting [3-1] motion to extend time to respond to
              complaint ( Signed by Judge Jose E. Martinez on 04/13/06)
              [EOD Date: 4/17/06] (sk) [Entry date 04/17/06]

5/18/06  5    UNOPPOSED MOTION with memorandum in support by All
              Defendants to transfer of venue (ra)

5/24/06  6    ORDER transferring case to District of Delaware re Civil
              Action No. 06-71 (GMS) ( Signed by Judge Adalberto Jordan
              on 05/23/06) [EOD Date: 5/26/06] (sk) [Entry date 05/26/06]

5/24/06  7    UNOPPOSED MOTION with memorandum in support by Astrazeneca,
              Astrazeneca LP, Astrazeneca AB, Aktiebolaget Hassle to
              extend time to respond to complaint (rb)
              [Entry date 05/30/06]

5/24/06  --   CASE CLOSED. Case and Motions no longer referred to
              Magistrate. [7-1] motion to extend time to respond to
              complaint, [5-1] motion to transfer of venue (sk)
              [Entry date 06/05/06]

6/5/06   8    ORDER denying as moot [7-1] motion to extend time to
              respond to complaint ( Signed by Judge Adalberto Jordan on
              06/05/06) [EOD Date: 6/6/06] (bs) [Entry date 06/06/06]

6/5/06   --   **Terminated document: [5-1] motion to transfer of venue (bs)
              [Entry date 06/06/06]

6/13/06  9    TRANSMITTAL letter with: court file, certified copies of
              the docket sheet and order of transfer- Sent to: United
              States District Court District of Delaware (sk)



Certified to be a true and
correct copy of the document on file
Clarence Maddox, Clerk,
U.S. District Court
Southern District of Florida
By
Deputy Clerk
Date  6/13/06

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO.:

DOROTHY FERGUSON,
on behalf of herself and all others similarly
situated,

    Plaintiffs,

 v.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP, ASTRAZENECA AB,
and AKTIEBOLAGET HASSLE,

    Defendants.

_____/



**CIV-JORDAN**

**KLEIN**

0 6 = 3 9 2

**FILED**

JUN 1 6 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### CLASS ACTION COMPLAINT

Plaintiff, on behalf of herself and those similarly situated (hereinafter the "Class"), file

this Class Action Complaint against Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca

LP, AstraZeneca AB, and Aktiebolaget Hassle (collectively "AZ" or "Defendants"), and alleges

as follows based upon personal knowledge as to matters relating to herself, and upon information

and belief as to all other matters:

### NATURE OF THE ACTION

1. This is a class action complaint alleging violations of federal antitrust law, the

Florida Antitrust Act, Fla. Stat. Ann. §§ 542.15, *et seq.*, and the Florida Deceptive and Unfair

Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq.* arising from the manufacture and

marketing of AZ's extended-release metoprolol succinate, Toprol-XL, a brand name drug.

2. In Count I of this Complaint, Plaintiff, on her own behalf and on behalf of all

others similarly situated nationwide, bring this action against AZ alleging monopolization of, and

an attempt to monopolize, the market for Toprol-XL, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

3.  Counts II through IV are brought on behalf of the Plaintiff herself and a sub-class of end-payors who, like Plaintiff, purchased or paid for Toprol-XL in Florida.

4.  Count V is also brought by Plaintiff, on her own behalf and on behalf of a nationwide class of end-payors, seeking restitution, a constructive trust and disgorgement of the unjust enrichment of AZ.

5.  As further alleged below, AZ engaged in an unlawful, anticompetitive scheme to block the entry of generic competition and thereby to illegally maintain its monopoly power in the United States market for Toprol-XL which market is comprised of the Toprol-XL, plus its AB-rated generic equivalents. AZ's scheme allowed it to charge supra-competitive prices, prevented prices of extended-release metoprolol succinate from falling to the competitive level that would have been reached subsequent to the entry of generic competition, and thereby caused Plaintiff and members of the Class to pay overcharges on their purchases of extended-release metoprolol succinate.

6.  Toprol-XL is an extended-release drug approved by the U.S. Food & Drug Administration ("FDA") for treating hypertension, angina, and congestive heart failure (together, herein referred to as "heart disease"). AZ sells this drug in 25 mg, 50 mg, 100 mg, and 200 mg dosages.

7.  As alleged in greater detail herein, Defendants engaged in a scheme involving the commission of fraud and/or inequitable conduct before the United States Patent and Trademark Office ("PTO") in order to obtain two patents -U.S. Patent No. 5,001,161 (the "161 Patent") and U.S. Patent No. 5,081,154 (the "154 Patent") (collectively, the "Patents")- which, in the absence

of such conduct, would not have issued. Defendants then proceeded to improperly procure the objectively baseless listing of the Patents with the FDA, in the FDA's so-called "Orange Book," in order to assert sham patent infringement claims against, and to block the market entry of, any potential competitor seeking FDA approval to manufacture and sell a competing, generic version of Toprol-XL.

8.     In July and August of 2003 and April and December of 2004, Defendants did, in fact, institute litigation against companies seeking approval from the FDA to market generic forms of Toprol-XL (the "Patent Litigation"), even though Defendants knew that the Patents had been improperly procured, were invalid, that no reasonable claim of infringement could be asserted against said companies based upon them, and that the listing of the Patents with the FDA was objectively baseless. In other words, the Patent Litigation was objectively baseless "sham" litigation. Defendants instituted the Patent Litigation not for any legitimate purpose, but solely because they knew the mere filing of such litigation would automatically delay the FDA's granting of final marketing approval to the generic manufacturers, without which approval the generics cannot come to market.

9.     In connection with their objectively baseless listings of the Patents with the FDA and in filing the objectively baseless Patent Litigation, Defendants illegally and intentionally manipulated certain provisions of the 1984 amendments to the Food, Drug, and Cosmetic Act added by the Drug Price Competition and Patent Term Restoration Act of 1984, commonly referred to as the Hatch-Waxman Act or Hatch-Waxman Amendments. *See* Pub.L. No. 98-417, 98 Stat. 1585 (1984) (codified as amended at 21 U.S.C. § 355 and 35 U.S.C. § 271(e)). As many courts have recognized, these amendments were principally designed to streamline the process by which generic drugs are brought to market.

10.     Defendants knew and intended that under the Hatch-Waxman Amendments the *mere filing* of the Patent Litigation would automatically bar the FDA from granting marketing approval to any of the would-be competing generic companies for up to thirty months, even though the Patents were fraudulently obtained and the Patent Litigation was baseless. Thus, although the Patents were ultimately found to be invalid, unenforceable, and procured through inequitable conduct by a United States District Court, Defendants were nevertheless able to block generic competition for an extended period of time and unlawfully maintain their monopoly simply by listing their Patents in the Orange Book and then filing and pursuing baseless patent litigation in the federal courts.

11.     By their unlawful acts, Defendants have willfully and unlawfully maintained their monopoly power over Toprol-XL and its AB-rated generic equivalents, *i.e.* the extended-release metoprolol succinate "molecule," and thereby benefited from hundreds of millions of dollars in ill-gotten revenues.

12.     Absent Defendants' unlawful conduct, less expensive, bioequivalent generic versions of Toprol-XL would have been on the market much earlier. Through their unlawful conduct, Defendants illegally deprived Plaintiff and the class access to substantially lower-priced extended-release metoprolol succinate. More specifically, through their unlawful conduct Defendants have illegally deprived Plaintiff and other Class members of the ability to sooner (a) substitute purchases of less-expensive generic versions of Toprol-XL for their purchases of far-more-expensive branded Toprol- XL, (b) receive discounts on their remaining purchases of branded Toprol-XL, and (c) purchase generic extended-release metoprolol succinate at lower prices. Defendants have caused Plaintiff and the Class to overpay for extended-release metoprolol succinate by at least hundreds of millions of dollars.

13.     The overcharges that purchasers of Toprol-XL were forced to pay by Defendants' unlawful conduct constitute prototypical antitrust injury.

14.     As a result of Defendants' unlawful, anticompetitive scheme, Defendants have (1) unreasonably restrained, suppressed, and eliminated competition in the market for extended-release metoprolol succinate (Toprol-XL and its AB-rated generic equivalents); (2) illegally maintained monopoly power in the market for extended-release metoprolol succinate; (3) fixed, raised, maintained, and/or stabilized the price of extended-release metoprolol succinate at supra-competitive levels; and (4) forced Plaintiff and other Class members to pay hundreds of millions of dollars for Toprol-XL at super-competitive prices that they would have saved had competing and/or generic versions of Toprol-XL been available.

15.     Defendants possess monopoly power with respect to extended-release metoprolol succinate, which power was maintained through willful and illegal conduct, and not through growth or development as a consequence of a superior product, business acumen or historic accident.

## JURISDICTION, PARTIES AND VENUE

16.     Plaintiff Ferguson, is a resident of Miami-Dade County, Florida, and was a purchaser of Toprol-XL during the Class Period as described herein. Plaintiff has paid for some or all of the purchase price of Toprol-XL prescribed to her during the Class Period, and has thereby been injured, and continues to be injured, as a result of Defendants' conduct.

17.     Defendant AstraZeneca Pharmaceuticals LP is a limited partnership organized and existing under the laws of Delaware, which distributes, markets, sells, and/or profits from pharmaceutical products including Toprol-XL throughout the United States and within the state of Florida. Its U.S. corporate headquarters is located at 1800 Concord Pike, Wilmington DE.

AstraZeneca Pharmaceuticals LP is a U.S. subsidiary of AstraZeneca PLC, and was created as a result of the union of Zeneca Pharmaceuticals and Astra Pharmaceuticals LP in the U.S. after the 1999 merger.

18.     Defendant AstraZeneca LP is a limited partnership organized and existing under the laws of Delaware, with its principal place of business at Wilmington, Delaware. AstraZeneca LP holds an approved New Drug Application from the United States Food and Drug Administration ("FDA") for metoprolol succinate preparations with extended-release, which it sells under the brand name Toprol-XL. AstraZeneca LP is a U.S. subsidiary of AstraZeneca PLC.

19.     Defendant AstraZeneca AB is a corporation organized and existing under the laws of Sweden, having its principal place of bus mess at S 151 85 Sodertalje, Sweden.

20.     Defendant Aktiebolaget Hassle is a corporation organized and existing under the laws of Sweden, having its principal place of business at Molndal, Sweden. Aktiebolaget Hassle is a wholly-owned subsidiary of AstraZeneca AB.

21.     Defendants' actions as part of, and in furtherance of, the illegal monopolization alleged herein, were authorized, ordered, or done by Defendants' officers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

22.     This action is brought under Section 16 of the Clayton Act, 15 U.S.C. § 26, for injunctive and equitable relief to remedy Defendants' violations of the federal antitrust laws, particularly Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a) and 15 U.S.C. § 26. In addition, this Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d), as amended in 2005, and 28 U.S.C. § 1367.

23.     Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. § 1391(b) because Defendants transact business, are found, and/or have agents in this district; and because a substantial portion of the affected trade and commerce described below has been carried out in this district.

## INTERSTATE TRADE AND COMMERCE

24.     During all or part of the Class period (defined below), one or more Defendants manufactured and sold substantial amounts of Toprol-XL in a continuous and uninterrupted flow of commerce across state and national lines throughout the United States.

25.     At all material times, Toprol-XL manufactured and sold by one or more Defendants was shipped across state lines and sold to customers located outside its state of manufacture.

26.     During all or part of the Class period, Defendants transmitted funds as well as contracts, invoices, and other forms of business communications and transactions in a continuous and uninterrupted flow of commerce across state and national lines in connection with the sale of Toprol-XL.

27.     In furtherance of their efforts to maintain monopoly power over Toprol-XL and its generic equivalents wilfully, Defendants employed the United States mails and interstate and international telephone lines, as well as means of interstate and international travel.

28.     Defendants' efforts willfully to maintain monopoly power over Toprol-XL and its generic equivalents wilfully, as alleged herein, have substantially affected interstate and foreign commerce.

## CLASS ALLEGATIONS

29.    Plaintiff brings this action under Rule 23(b)(2) of the Federal Rules of Civil

Procedure, with respect to the declaratory and euitable relief sought herein, and Rule 23(b)(3) of

the Federal Rules of Civil Procedure, with respect to the damages sought herein, as a

representative of the Class defined as follows:

> With respect to Counts I and V, all persons and entities throughout the United States and its territories who purchased and/or paid for Toprol-XL from Defendants at any time from May 5, 2005 through the present continuing until the effects of Defendants' anticompetitive conduct cease (the "Class Period") for consumer use. For purposes of the Class definition, persons and entities "purchased" Toprol-XL if they paid some or all of the purchase price. Excluded from the class are Defendants and their parents, employees, subsidiaries, and affiliates (the "Class").

> With respect to Counts II, III, and IV, a Sub-Class consisting of all persons or entities who purchased and/or paid for Toprol-XL in the state of Florida for consumer use at any time during the class period.

30.    The Class is so numerous that joinder of all members is impracticable. Plaintiff

believes that the Class numbers one hundred or more.

31.    There are numerous questions of law and/or fact common to the Class, including:

a.    whether Defendants willfully obtained and/or maintained monopoly power

over Toprol-XL and its generic equivalents;

b.    whether Defendants' Patents were obtained through fraud and/or

inequitable conduct

c.    whether but for Defendants' fraud, the Patents would not have issued;

d.    whether Defendants' listings of the Patents in the FDA "Orange Book"

were objectively baseless;

e.    whether the Patent Litigation was objectively baseless;

f.     whether Defendants maintained monopoly power by delaying generic entry;

g.     whether the law requires definition of a relevant market when direct proof of monopoly power is available, and if so the definition of the relevant market;

h.     whether the activities of Defendants as alleged herein have substantially affected interstate commerce; and

i.     whether, and to what extent, Defendants' conduct caused antitrust injury in the nature of overcharges to Plaintiff and the members of the Class, and if so, the appropriate measure of damages.

32.     These and other questions of law and fact are common to the members of Class and predominate over any questions affecting only individual members.

33.     Plaintiffs claims are typical of the claims of the Class because all Class members paid overcharges, and thus suffered antitrust injury, as a result of Defendants' wrongdoing, and the claims of each Class member arise out of the same nucleus of operative facts and are based on the same legal theories.

34.     Plaintiff will fairly and adequately represent, and protect the interests of, the Class. Plaintiff has retained counsel experienced in class action and pharmaceutical antitrust litigation, and Plaintiff has no interest in this litigation that is adverse to, or in conflict with, the interests of the other members of the Class.

35.     A class action is superior to any other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty that will be encountered in the ttlanagemeiit of the claims advanced by the Class that would preclude class certification.

## BACKGROUND

### A. Branded Drugs

36.    The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* (the "FD&C Act") regulates the manufacture and distribution of drugs and medical devices in the United States. Under the FD&C Act, approval by the FDA (the governmental body charged with the regulation of the pharmaceutical industry) is required before a company may begin selling a new drug in interstate commerce in the United States. 21 U.S.C. § 355(a). Pre-market approval for a new drug must be sought by filing a new drug application ("NDA ") with the FDA under § 355(b) of the FD&C Act demonstrating that the drug is safe and effective for its intended use.

37.    New drugs that are approved for sale in the United States by the FDA are typically covered by patents, which provide the patent owner with the ability to seek to exclude others from manufacturing, using, and/or selling (depending on the scope of the patent) that new drug in the United States for the duration of the patents, plus any extension of the original patent granted pursuant to the Hatch-Waxman Act.

38.    Pursuant to 21 U.S.C. § 355(b), in its NDA, the pioneer drug manufacturer must list those patents that claim the drug for which FDA approval is being sought or that claim a method of using the drug and with respect to which a claim of patent infringement could reasonably be asserted against an unlicensed manufacturer or seller of the drug. Once the NDA is approved by the FDA, any such patents are listed with the NDA in a publication known as the Approved Drug Products with Therapeutic Equivalence Evaluations, commonly referred to as the "Orange Book."

39.    Federal regulations impose strict limitations on the types of patents that an NDA holder can submit to the FDA for listing in the Orange Book. *See generally* 21 C.F.R. § 314.53.

One such limitation is imposedby21 C.F.R. § 314.53(b), which explicitly prohibits NDA holders from listing any patent in the Orange Book unless a claim of infringement could reasonably be asserted on the basis of such a patent.

40.    Despite the FDA regulations that limit the types of patents that NDA holders can list in the Orange Book, it has regrettably become common for brand-name pharmaceutical companies to list in the Orange Book any and every patent they can obtain, so as to force generic manufacturers to file what, as described below, is commonly known as a Paragraph IV certification.

41.    The FDA does not police the listing of patents. The FDA employs no adjudicatory or other process to determine whether a patent submitted by an NDA holder qualifies for listing in the Orange Book. The FDA has stated that it lacks the resources and expertise to review the patents submitted in connection with NDAs. *See* 59 Fed. Reg. 50338, 50343 (Oct. 3, 1994) ("FDA does not have the expertise to review patent information").

42.    As a result, as numerous courts have recognized, the FDA's role in the patent listing process is purely ministerial, and it relies entirely upon the good faith of the NDA holder submitting the patent for listing.

## B. Generic Drugs

43.    Generic drugs are drugs that the FDA has found to be bioequivalent to their corresponding brand name drugs. A generic drug provides identical therapeutic benefits and has the same side effects and safety profile as its corresponding brand name drug.

44. Generic drugs invariably cost substantially less than the branded drugs to which they are bioequivalent. Typically, the first generic version of a brand name drug is sold at a substantial discount to the brand, followed by increasingly steeper discounts as more generics of that particular molecule enter the market.

45. Under the Hatch-Waxman Act, a generic drug manufacturer may seek expedited FDA approval to market a generic version of a brand name drug with an approved NDA by filing an Abbreviated New Drug Application ("ANDA"), pursuant to 21 U.S.C. § 355(j). An ANDA relies on the safety and efficacy data already filed with the FDA by the manufacturer of the equivalent brand name drug.

46. To obtain FDA approval of an ANDA (and thus the legal right to sell a generic version of brand-name drug), a generic manufacturer must certify that the generic drug addressed in its ANDA does not infringe any patent listed in the Orange Book as claiming the brand-name drug.

47. Under Hatch-Waxman, a generic manufacturer's ANDA must contain one of four certifications pursuant to 21 U.S.C. § 355(j)(2)(A)(vii). Four types of certifications are available:

> I. The brand name manufacturer has not filed patent information with the FDA (a "Paragraph I Certification");
>
> II. The patent or patents listed in the Orange Book have expired (a "Paragraph II Certification");
>
> III. The patent will expire on a date in the future, and the generic manufacturer does not seek to market its generic version of the drug prior to the date of expiration (a "Paragraph III Certification"); or

IV.     The patent is invalid or not infringed by the generic manufacturer's
        product (a "Paragraph IV Certification").

48.     If a drug manufacturer's ANDA contains certifications under Paragraphs I, II or III, the ANDA may be filed five years after the NDA for the referenced drug was approved. If the ANDA contains a paragraph IV certification, the ANDA can be filed 4 years after the NDA for the referenced drug was approved. *See* Frequently Asked Questions for New Product Exclusivity at www.fda.gov/cder/about/smallbiz/exclusivity.htm

49.     If a generic manufacturer files a Paragraph IV Certification asserting that the patent is invalid or will not be infringed, the brand-name manufacturer has the opportunity to delay the generic manufacturer's receipt of final approval, and, thus, its ability to come to market. This is because a generic manufacturer filing a Paragraph IV Certification must promptly give notice of this fact to both the NDA owner and the owner of the patent(s) at issue.

50.     The Paragraph IV Certification constitutes a "technical act of infringement" under Hatch-Waxman which creates jurisdiction in the federal courts to entertain a patent infringement action, and gives the NDA holder forty-five days from the date of the notice to institute such an action against the generic manufacturer under 35 U.S.C. § 271(e)(2). *See* 21 U.S.C. § 355(j)(5)(B)(iii). If such a suit is initiated, the FDA's approval of the ANDA is automatically stayed for up to thirty months. *See* 21 U.S.C. § 355(j)(5)(B)(iii).

51.     Because of this thirty-month stay, the mere filing of an infringement action in response to a Paragraph IV Certification, regardless of the action's underlying merit, gives the brand-name company the functional equivalent of a self-effectuating preliminary injunction blocking the entry of a generic competitor, without the brand company's ever having to establish likelihood of success on the merits, irreparable harm, that the balance of hardships tips in its

favor, or that the public good is served by the blocking of entry. Indeed, as a practical matter the brand name company wins the lawsuit simply by filing it, as it automatically protects its monopoly for up to two-and-a-half years, and possibly longer, while the infringement action winds its way through the court system (and the brand name company has an incentive to stall the progress of this action). There are no disgorgement provisions for profits earned during the thirty-month period of exclusivity if a court eventually determines that the suit was without merit.

52.     An improper Orange Book listing also has additional anticompetitive effects, because the first generic company to file an ANDA with a Paragraph IV Certification is, upon FDA approval, granted a 180-day period of marketing exclusivity in relation to other generic manufacturers. 21 U.S.C. § 355(j)(5)(B)(iv). This 180-day exclusivity period is awarded to the first Paragraph IV Certification ANDA filer regardless of whether or not the brand company institutes pre-approval patent infringement litigation in response to the Paragraph IV certification. Absent an improper Orange Book listing, no Paragraph IV certification would be required and, thus, no generic company would receive 180-day exclusivity; rather, multiple generic competitors would enter the market simultaneously.

53.     Defendants were at all times fully familiar with their ability to delay the entry of generic competition by the improper manipulation of the patent listing and pre-approval litigation provisions of the Hatch-Waxman Act.

## DEFENDANTS' ANTCOMPETITIVE CONDUCT

54.     AZ has successfully forestalled generic competition to Toprol-XL from entering the market - thereby delaying purchasers the benefits of cheaper, generic extended-release

metoprolol succinate products - by obtaining the Patents, which they did not deserve, from the PTO through intentional and fraudulent misrepresentations and omissions, fraudulently listing the Patents in the Orange Book, and bringing and maintaining the sham Patent Litigation based thereon.

## A. Defendants' Fraudulent Procurement of Patents

55.     Defendants have falsely asserted that two patents cover Toprol-XL and bar generic competition: the '161 Patent and the '154 Patent.

56.     The '161 Patent issued on March 19, 1991, with a single claim: "A pharmaceutical composition comprising metoprolol succinate together with a sustained release pharmaceutically acceptable carrier."

57.     The '154 Patent issued on January 14, 1992, with a single claim: "Metoprolol succinate."

58.     The named inventors on both the '161 and '154 Patents are Curt H. Appelgren and Eva C. Eskilson. However, Appelgren and Eskilson were not the inventors of metoprolol succinate, which had been first made at AZ before either of them joined the company and more than ten years before patent applications claiming the compound were filed in the PTO naming them as inventors.

59.     As explained in detail below, when Appelgren and Eskilson tried to claim formulations of metoprolol succinate for their new employer after leaving the employ of AZ, AZ contested their right to do so and asserted its ownership to rights to metoprolol succinate in a complaint filed in the Swedish Patent Office that alleged that metoprolol succinate had been invented by its employee Toivo Nitenberg and disclosed in confidence to Appelgren and Eskilson. Several months later, Appelgren and Eskilson agreed to drop metoprolol succinate

from their application, assign rights to AZ, and file a new application directed to metoprolol succinate and assign the new application to AZ.

60.    In the early 1980s, Appelgren and Eskilson were employed at AZ's AB Hassle division in Molndal, Sweden. Among their duties, Appelgren and Eskilson participated in a project to develop new controlled-release formulations of metoprolol. Their duties, however, had nothing to do with the identification, synthesis, or invention of different salts of metoprolol.

61.    Under the organization and procedures within the AZ organization at the time, responsibility for synthesis of alternative compounds rested with a group employed by Astra Pharmaceutical Production AB, located in Sodertalje, Sweden. Neither Appelgren nor Eskilson conceived of or synthesized metoprolol succinate. Rather, that compound was supplied to the group of which Appelgren and Eskilson were members by chemists employed by AZ in Sodertalje, including Lars Lilljequist.

62.    In his deposition taken in AZ's patent litigation against potential generic competitors, Appelgren admitted that metoprolol succinate was not a newly developed product at AZ, but was an "old," known compound supplied to the product development group.

63.    The other inventor, Ms. Eskilson, could not recall at her deposition why she was named an inventor of metoprolol succinate.

64.    At the end of 1982, Appelgren resigned from Hassle to form his own company, Lejus Medical AB ("Lejus"). Appelgren was a founder and 25% owner of Lejus.

65.    Several months later, Eskilson joined Appelgren at Lejus, and Appelgren and Eskilson began to work on developing a sustained release formulation of quinidine sulphate for a U.S. company unrelated to AZ.

66.    On January 10, 1984, Lejus filed a Swedish patent application (SE8400085, the "Swedish Application") naming Appelgren and Eskilson as the inventors based on the sustained release formulation they had developed for quinidine sulphate at Lejus. When listing potentially useful pharmaceutical agents for their sustained release formulation, Appelgren and Eskilson included metoprolol succinate. Although Appelgren and Eskilson knew of metoprolol succinate from their work at Hassle, they did not believe they were violating any duty of confidentiality by disclosing it in the Swedish Application because they did not believe it was a new compound and certainly did not believe they were its inventors.

67.    The Lejus application was published in July of 1985 and Call 1e to the attention of Hassle and its parent, Astra AB, which on October 21, 1985, filed a complaint with the Swedish Patent Office asserting that Appelgren and Eskilson were not the inventors of metoprolol succinate and that the compound was invented by Toivo Nitenberg, a Hassle employee. At this point, Lejus had already filed a corresponding U.S. patent application (U.S. Serial No. 690,197 (the "'197 Application"), which ultimately issued as U.S. Patent No.4, 780,318 (the "318 Patent").

68.    To settle Hassle's complaint, Lejus, Appelgren, and Eskilson agreed to assign Hassle any rights to metoprolol succinate in an agreement dated April 21, 1986 (the "Lejus/Hassle Agreement"). The Lejus/Hassle agreement was negotiated on behalf of Hassle and AZ at least by employees of AZ's patent department, including Bengt Wurm.

69.    In March of 1988, Lejus filed the U.S. patent application (U.S. Serial No. 172,897 (the "'897 Application") that eventually issued as the '161 Patent, tracking almost exactly the agreed-upon language from the Lejus/Hassle agreement. Thereafter, Lejus assigned this application to Hassle.

70.    By the time this application was filed in March of 1988, more than one year had passed since publication of Lejus's Swedish Application naming metoprolol succinate and claiming sustained-release pharmaceutical formulations containing metoprolol succinate. Thus, Hassle knew that unless the applications issuing as the' 161 and ' 154 Patents could rely on the filing date of the Swedish Application, any new claims in the '161 and '154 Patents to metoprolol succinate or sustained-release formulations of it would be unpatentable, *inter alia,* as anticipated by the Swedish Application, pursuant to 35 V.S.C. §§ 102(b), 119(a). They would have been unpatentable as anticipated because of other prior art as well, including an article published in 1987 and two other patent applications filed by Hassle.

71.    Thus, Hassle knew that if it identified Nitenberg as the inventor *of* the '161 and'154 Patents, then because Nitenberg is not an inventor on the' 897 application and the Swedish Application, that Hassle would not be able to rely on the filing date of the Swedish Application for the '161 and '154 Patents and those patents would be rejected by the PTO or invalidated in litigation.

72.    Hassle knew that in order to obtain V.S. patents directed to metoprolol succinate and avoid the bar of the published Swedish Application, it had to file fraudulently in the names of Appelgren and Eskilson in order to make a (fraudulent) claim of priority.  Hassle did just this.

73.    Appelgren, Eskilson, the representatives prosecuting the applications, employees of Hassle and AŽ, and others involved in the prosecution *of* the '161 and '154 Patents knew that Appelgren and Eskilson were not the joint inventors of metoprolol succinate *or* the subject matter claimed in the Patents.

74.    During the prosecution of the '161 and '154 Patents, Defendants did not disclose to the PTO its complaint to the Swedish Patent Office dated October 21, 1985, the Lejus/Hassle

Agreement, the facts leading to these documents, or that Toivo Nitenberg had made metoprolol succinate in 1971.

75.     During the prosecution of the '161 and ' 154 Patents, Defendants intentionally made other material misrepresentations and omissions, including in submitting a declaration of an employee, John Anders Sandberg (the "Sandberg Declaration"). Among other things, although the Sandberg Declaration extols the virtue of metoprolol succinate for use in once-daily, controlled-release preparations, Defendants did not explain that its alleged virtues were unique to a particular formulation developed by Sandberg, unrelated to any work done by Appelgren and Eskilson. The Sandberg Declaration also omits material information known to Dr. Sandberg and Defendants about prior art and the performance of other metoprolol salts.

76.     Because the facts and information that Defendants failed to disclose and/or misrepresented to the PTO directly relate to proper inventorship and derivation and would have precluded patentability under, at least, 35 U.S.C. § 102(f), they were of the highest materiality.

77.     These omissions and/or misrepresentations were purposeful. They were made with an intent to deceive and did, in fact, deceive the PTO, resulting in the issuance of the '161 and '154 Patents.

**B. Defendants' Sham Disclaimer**

78.     Claim 8 of Defendants' '318 Patent, which issued on October 25,1988 (expiring on October 25, 2005), claims, among other compounds, "metoprolol succinate."

79.     The claims of the '161 and '154 Patents also claim "metoprolol succinate," but are due to expire on March 18, 2008, which is more than 17 years after the issuance of the '318 Patent.

80.    Defendants knew that the Patent Act (as it existed when the '318 Patent was filed) entitled them only to 17 years of patent protection for metoprolol succinate and that the Patent Act prohibited them from "double patenting" metoprolol succinate in order to obtain more than 17 years of patent protection. However, Defendants did not file any terminal disclaimers limiting the patent monopoly for metoprolol succinate to 17 years.

81.    Because Defendants did not file terminal disclaimers *for* the '161 and '154 Patents, the Patents are invalid for obviousness-type double patenting due to Claim 8 of the '318 Patent, and Defendants knew this.

82.    On November 21, 2003, Defendants filed a statutory disclaimer of Claim 8 of the 318 Patent, effectively canceling the claim. By filing the statutory disclaimer of Claim 8 of the 318 Patent, instead of filing terminal disclaimers of the 161 and 154 Patents, Defendants wrongfully and in bad faith attempted to circumvent double-patenting invalidity of the ' 161 and ' 154 Patents and obtain more than 17 years of patent protection for metoprolol succinate.

83.    Defendants' filing of the statutory disclaimer of Claim 8 to overcome the obviousness-type double patenting invalidity of the 161 and 154 Patents is objectively baseless and was not done for any legitimate purpose. This filing was, thus, a sham.

## C. Defendants' Sham Orange Book Listings

84.    Despite Defendants' knowledge that the '161 and '154 Patents were invalid, Defendants caused the patents to be listed in the Orange Book as covering Toprol-XL and as reasonably giving rise to a claim of infringement. Further, Defendants did not withdraw these Orange Book listings even after being provided with clear proof that they were improper. The Orange Book listings were objectively baseless.

85.    Defendants knew that under the Hatch-Waxman Act, if they sued to enforce patents listed in the Orange Book, they would (a) receive effectively an automatic injunction that would last up to thirty months, or more, (b) bar generic competitors from marketing extended-release metoprolol succinate products without any proof of likelihood of success, and regardless of the invalidity of the listed patents or the baselessness of the suit, and (c) delay FDA action, attention to, and approval of ANDAs filed by generic competitors.

86.    Defendants' decisions to cause the patents to be listed, not to inform the FDA that the '161 and '154 Patents were invalid, and not to withdraw the Orange Book listings, were intentionally deceptive.

### D. Defendants' Sham Patent Litigation

87.    Despite Defendants' knowledge that the '161 and '154 Patents were invalid, Defendants commenced the Patent Litigation based on these Patents against the following companies seeking to market bioequivalent, generic versions of Toprol-XL: KV Pharmaceutical Co., Andrx Pharmaceuticals, LLC, Andrx Corp., and Eon Labs, Inc. (collectively, the "Generic Manufacturers"). The Patent Litigation was ultimately transferred to the United States District Court for the Eastern District of Missouri for pretrial proceedings.

88.    Knowing that the Patent Litigation was objectively baseless and a sham, Defendants nonetheless commenced and maintained them deceptively, in bad faith, and with the specific intent and subjective motivation to prevent the Generic Manufacturers from selling competing extended-release metoprolol succinate products.

89.     Defendants knew that even though ultimately they could not expect success on the merits of the Patent Litigation, the process itself of commencing the sham litigation would nonetheless enable them automatically to bar the generic manufacturers from coming to market for up to thirty months or more, under 21 U.S.C. § 355(j)(5)(b)(iii).

90.     Defendants' lawsuits were shown to be a sham. On January 17, 2006, United States District Judge Rodney W. Sippel granted summary judgment for the Generic Manufacturers, determining, *inter alia,* any reasonable jury was bound to find that clear and convincing evidence established that (1) the '161 and '154 Patents were invalid for double-patenting based on Claim 8 of the '318 Patent, and (2) the '161 and '154 Patents were unenforceable because of AZ's misconduct in not informing the patent examiner about the dispute regarding inventors hip while prosecuting the patents. On the latter point, Judge Sippel found that the inventorship issue was "highly material" to patentability and that AZ's intent to deceive was "clearly present."

91.     Defendants' conduct during the Patent Litigation further evinces their anti-competitive intent. For example, Judge Sippel noted that, during the litigation, Defendants "maintained a pattern of submitting witness declarations that contradict their own prior deposition testimony."

## EFFECTS ON COMPETITION

92.     Defendants' exclusionary conduct has delayed generic competition and unlawfully enabled Defendants to sell Toprol-XL without generic competition. But for Defendants' illegal conduct, one or more generic competitors would have begun marketing AB-rated generic versions of Toprol-XL much sooner than they actually will be marketed, and, at all events, would have been on the market no later than May 5, 2005.

93.     The generic manufacturers seeking to sell generic Toprol-XL have extensive experience in the pharmaceutical industry, including in obtaining approval for ANDAs and marketing generic pharmaceutical products. Eon Labs, Inc. ("Eon"), for example, has a history of achieving high approval rates for its ANDAs, usually within twelve to thirteen months of filing an ANDA.

94.     Eon has publicly affirmed its intention and ability to begin selling generic Toprol-XL upon approval of its ANDA. However, Defendants' unlawful conduct has caused the ANDA approval process to be delayed by the FDA, and caused the generic manufacturers to divert resources from their ANDA applications and to expend unnecessary resources on litigation. Another potential generic manufacturer, Andrx, has recently had its pending drug applications placed on hold, which would not have affected its extended-release metoprolol succinate ANDA absent Defendants' causing delay.

95.     Absent the Patent Litigation, which imposed an automatic thirty-month stay of final ANDA approval, the Generic Manufacturers and the FDA would have had reason to, and would have, focused upon and poured resources into the ANDA approval process for generic extended- release metoprolol succinate. Such focus and resources would have brought far earlier FDA approval and far earlier marketing of generic Toprol-XL.

96.     Defendants' illegal acts to delay the introduction into the U.S. marketplace of any generic version of Toprol-XL caused Plaintiff and the Class to pay more than they would have paid for extended-release metoprolol succinate, absent Defendants' illegal conduct.

97.     Typically, generic versions of brand-name drugs are initially priced significantly below their corresponding, AB-rated brand-name versions. As a result, upon generic entry, direct purchasers rapidly substitute generic versions of the drug for some or all of their purchases. As

more generic manufacturers enter the market, prices for generic versions of a drug predictably plunge even further because of competition among the generic manufacturers, and, correspondingly, the brand-name drug continues to lose even more market share to the generics. This price competition enables all direct purchasers of the drugs to: (a) purchase generic versions of a drug at a substantially lower price, and/or (b) purchase the brand-name drug at a reduced price. Consequently, brand-name drug manufacturers have a keen financial interest in delaying the onset of generic competition, and purchasers experience substantial cost inflation from that delay.

98.    If generic competitors had not been unlawfully prevented from earlier entering the market and competing with Defendants, purchasers, such as Plaintiff, would have paid less for extended-release metoprolol succinate by (a) substituting purchases of less-expensive AB-rated generic extended-release metoprolol succinate for their purchases of more-expensive branded Toprol-XL, and (b) purchasing generic extended-release metoprolol succinate at lower prices sooner.

99.    Moreover, because of Defendants' objectively baseless Orange Book listings, once the generic manufacturer that filed first for a particular dosage strength begins to sell its generic version of Toprol-XL, it will be entitled to 180 days of generic marketing exclusivity for that dosage strength. This process delays the entry of other generic competitors into the market and further forestalls price competition, competition that would have existed but for Defendants' wrongful conduct.

100.    Moreover, due to Defendants' conduct, other generic manufacturers were discouraged from and/or delayed in developing generic versions of Toprol-XL.

101.    Thus, Defendants' unlawful conduct deprived Plaintiff and the Class of the benefits of competition that the antitrust laws were designed to ensure.

## ANTITRUST IMPACT UPON PLAINTIFF AND MEMBERS OF THE CLASS

102.    During the relevant period, Plaintiff and members of the Class purchased substantial amounts of Toprol-XL from Defendants. As a result of Defendants' illegal conduct, members of the Class were compelled to pay, and did pay, artificially inflated prices for their extended-release metoprolol succinate requirements. Those prices were substantially greater than the prices that members of the Class would have paid absent the illegal conduct alleged herein, because: (1) the price of brand-name Toprol-XL was artificially inflated by Defendants' illegal conduct and/or (2) class members were deprived of the opportunity to purchase lower-priced generic versions of extended-release metoprolol succinate sooner.

103.    As a consequence, Plaintiff and members of the Class have sustained substantial losses and damage to their business and property in the form of overcharges. The full amount and forms and components of such damages will be calculated after discovery and upon proof at trial.

## MONOPOLY POWER

104.    Defendants have monopoly power over Toprol-XL and its generic equivalents, because they have had the power to maintain the price of Toprol-XL at supracompetitive levels profitably, without losing substantial sales.

105.    A significant, non-transitory price increase by Defendants of Toprol-XL would not have caused a significant loss of sales to other products.

106.    Defendants need to control only Toprol-XL and its AB-rated generic equivalents in order to maintain the price of Toprol-XL profitably at supracompetitive prices. So while the

market entry of a competing, AB-rated generic version of Toprol-XL will render Defendants unable to maintain their current prices of Toprol-XL without losing substantial sales, the existence of or entry onto the market of no other drug product on the market would render Defendants so unable.

107.  Defendants also sold Toprol-XL at prices well in excess of marginal costs and enjoyed high profit margins.

108.  Moreover, Defendants have had, and exercised, the power to exclude competition.

109.  To the extent that defining a relevant product market is necessary in this case, the relevant product market is Toprol-XL and its AB-rated generic equivalents.

110.  The relevant geographic market is the United States.

111.  Defendants currently hold a 100% share in the relevant product market in the United States.

112.  Plaintiff and members of the Class continue to pay higher prices for their extended- release metoprolol succinate purchases than they would otherwise have paid, as a result of Defendants' unlawful and willful acquisition and/or maintenance of their monopoly power through the conduct alleged herein.

## FIRST CAUSE OF ACTION

### FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER SECTION 16 OF THE CLAYTON ACT FOR DEFENDANTS VIOLATIONS OF SECTION 2 OF THE SHERMAN ACT
### (On Behalf of a Nationwide Class of End Payors)

113.  Plaintiff repeats and realleges paragraphs 1 through 112 as though set forth herein.

114. Defendants knowingly and intentionally engaged in an anticompetitive scheme designed fraudulently to obtain the '161 and '154 Patents and willfully to maintain their monopoly power. This scheme included procuring the '161 and '154 Patents by committing fraud and/or inequitable conduct before the PTO, improperly listing the '161 and '154 Patents in the Orange Book, and improperly filing and prosecuting the objectively baseless Patent Litigation against the Generic Manufacturers. Defendants' scheme was designed to delay the introduction of AB-rated, generic versions of Toprol-XL into the market.

115. By their scheme, Defendants intentionally and wrongfully maintained their monopoly power with respect to Toprol-XL in violation of Section 2 of the Sherman Act. As a result of this unlawful maintenance of monopoly power, Plaintiff and members of the Class paid artificially inflated prices for their extended-release metoprolol succinate requirements.

116. Plaintiff and members of the Class have been injured in their business or property by Defendants' antitrust violations. Their injury consists of having paid, and continuing to pay, higher prices for their extended-release metoprolol succinate requirements than they would have paid in the absence of those violations. Such injury, called "overcharges," is of the type antitrust laws were designed to prevent, flows from that which makes Defendants' conduct unlawful, and Plaintiff and the Class are the proper entities to bring a case concerning this conduct.

117. Plaintiff and the Class, pursuant to Rule 57 of the Federal Rules of Civil Procedure and 18 U.S.C. § 2201(a), hereby seek a declaratory judgment that Defendants' conduct in seeking to prevent competition through the use of invalid patents violates Section 2 of the Sherman Act.

118. Plaintiffs and the Class further seek equitable and injunctive relief pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and other applicable law, to correct for the anti-

competitive market effects caused by the unlawful conduct of the Defendants, and other relief so
as to assure that similar anti-competitive conduct does not occur in the future.

## SECOND CAUSE OF ACTION

### FOR VIOLATIONS OF THE FLORIDA ANTITRUST ACT AND THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(On Behalf of the Florida Indirect Purchaser Sub-Class)

119.    Plaintiff repeats and realleges paragraphs 1 through 112 as though fully set forth
herein.

120.    This is a claim for violations of the Florida Antitrust Act, Fla. Stat. Ann.

§§ 542.15, *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann.

§§ 501.201, *et seq.*

121.    As a result of the conduct described above, Plaintiff and the Class have sustained
and will continue to sustain substantial losses and damage to their businesses and property in the
form of, *inter alia*, being deprived of the ability to purchase less expensive, generic versions of
Toprol-XL, and paying prices for such products that were higher than they would have been but
for Defendants' improper actions. The full amount of such damages are presently unknown and
will be determined after discovery and upon proof at trial.

122.    Plaintiff and the Class seek damages, multiple damages, treble damages, and other
damages as permitted by state law, for their injuries caused by these violations pursuant to these
statutes.

## THIRD CAUSE OF ACTION

### FOR INJUNCTIVE AND DECLARATORY RELIEF UNDER THE FLORIDA ANTITRUST ACT AND THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
(On Behalf of the Florida Indirect Purchaser Sub-Class)

123.    Plaintiff repeats and realleges paragraphs 1 though 112 as though fully set forth herein.

124.    Defendants' conduct described herein constitutes unlawful acts of monopolization and attempts to monopolize, as well as prohibited practices and unconscionable conduct under the Florida Antitrust Act, Fla. Stat. Ann. §§ 542.15, et seq., and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, et seq.

125.    Plaintiff and the other members of the Class have been injured in their business or property by reason of Defendants' antitrust violation alleged in this Count. Their injury consists of being deprived of the ability to purchase less expensive, generic versions of Toprol-XL, and paying higher prices for Toprol-XL and generic versions of Toprol-XL than they would have paid but for Defendants' improper actions. The injury to Plaintiff and the Class is the type of injury antitrust laws were designed to prevent, and the injury flows from Defendants' unlawful conduct.

126.    Plaintiff and the Class, pursuant to laws of the State of Florida, hereby seek a declaratory judgment that Defendants' conduct in seeking to prevent competition through the scheme set forth herein is unlawful. Plaintiff and the Class further seek equitable and injunctive relief pursuant to the laws of the State of Florida to correct for the anti-competitive market effects and other harms to purchasers caused by the unlawful conduct of Defendants, and other relief so as to assure that similar conduct does not occur in the future.

### FOURTH CAUSE OF ACTION

**UNFAIR AND DECEPTIVE TRADE PRACTICES IN VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT**
**(On Behalf of the Florida Indirect Purchaser Sub-Class)**

127.    Plaintiff incorporates by reference paragraphs 1 through 112 as if fully set forth herein.

128.    As described herein, Defendants have intentionally and repeatedly used deception, fraud, false pretense, false promise, misrepresentation, and/or concealment, suppression or omission of material facts in connection with their anti-competitive conduct regarding the sale of Toprol-XL, including but not limited to preventing or suppressing competition from generic versions of the drug as described above. Plaintiff and the class were forced by Defendants to purchase Toprol-XL instead of generic versions of Toprol-XL at a fraction of the price.

129.    Defendants have therefore violated the Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201 - 501.2101.

130.    FDUTPA provides that unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts or practices in the conduct of "any trade or commerce" are unlawful. Fla. Stat. § 501.204. Under FDUTPA, "trade or commerce" is defined to include advertisement or solicitation relating to any "thing of value." Fla. Stat. § 501.203(8).

131.    Plaintiff and the Class members are "consumers" or "persons," as defined and construed under FDUTPA (Fla. Stat. §§ 501.201 - 501.213).

132.    Defendants' conduct as alleged herein occurred in the conduct of trade and/or commerce.

133.    Defendants' actions, as complained of herein, constitute unfair, deceptive and unlawful practices committed in violation of FDUTPA.

134. Defendants' actions, as complained of herein, constitute false promises, misrepresentations, and/or the concealment, suppression, or omission of material facts committed with the intent that others rely on such actions in violation of the FDUTPA.

135. Defendants willful violations of FDUTPA have caused Plaintiff and the Class to suffer damage in the form of payments for Toprol-XL that were substantially more than payments would have been for generic versions of Toprol-XL.

136. Plaintiff and the members of the Class are therefore entitled to an award of compensatory damages in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### FOR RESTITUTION, DISGORGEMENT AND CONSTRUCTIVE TRUST FOR UNJUST ENRICHMENT BY DEFENDANTS
(On Behalf of a Nationwide Class of End Payors)

137. Plaintiff repeats and realleges paragraphs 1 through 114 as though fully set forth herein.

138. As a result of their unlawful conduct described above, Defendants have been and will continue to be unjustly enriched. Specifically, Defendants have been unjustly enriched, to the detriment of Plaintiff and the Class by the receipt of, at a minimum, unlawfully inflated prices and/or illegal monopoly profits on their sale of Toprol-XL.

139. Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of their ill-gotten gains resulting from the overpayments for Toprol-XL made by Plaintiff and the Class.

140. Plaintiff and members of the Class are entitled to the amount of Defendants' ill-gotten gains resulting from Defendants' unlawful, unjust and inequitable conduct. Plaintiff and

the Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiff and the Class members may make claims on a *pro rata* basis.

**WHEREFORE**, Plaintiff prays that:

(a)     the Court determine that this action may be maintained as a class action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure with respect to Plaintiff's claims for declaratory, equitable and injunctive relief, and Rule 23(b)(3) of the Federal Rules of Civil Procedure with respect to the claims for damages; and declare Plaintiff as the representative of the Class;

(b)     the conduct alleged herein be declared, adjudged and decreed to be in violation of Section 2 of the Sherman Act, of the statutes of the State of Florida as set forth above, and the common law of unjust enrichment;

(c)     Plaintiff and each member of the Class be awarded damages and, where applicable, treble, multiple, and other damages, according to the laws of the State of Florida, including interest;

(d)     Plaintiff and each member of the Class recover the amounts by which Defendants have been unjustly enriched;

(e)     Defendants be enjoined from continuing the illegal activities alleged herein;

(f)     Plaintiff and the Class recover their costs of suit, including reasonable attorneys' fees and expenses as provided by law;

(g)     Plaintiff and the Class be granted such other and further as the Court deems just and necessary.

## JURY DEMANDED

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.

Dated: March 20, 2006

Respectfully submitted,

By_____
Lance A. Harke, P.A.
Florida Bar No. 863599
Sarah Clasby Engel, P.A.
Florida Bar No. 991030
Howard M. Bushman, Esq.
Florida Bar No. 0364230

*Counsel for Plaintiff and the Class*

HARKE & CLASBY LLP
155 S. Miami Ave., Suite 600
Miami, FL 33130
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

06-20709

**JS 44** (Rev. 11/04)

# CIVIL COVER SHEET

CIV-JORDAN

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

DOROTHY FERGUSON,
on behalf of herself and all others similarly
situated,

**DEFENDANTS**

ASTRAZENECA PHARMACEUTICALS LP, et al.

**(b)** County of Residence of First Listed Plaintiff    Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Harke & Clasby LLP          (Tel) 305-536-8220
155 South Miami Ave. Suite 600    (Fax) 305-536-8229
Miami, FL 33130

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☒ DADE  ☐ MONROE  ☐ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE  HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | | III. CITIZENSHIP OF PRINCIPAL PARTIES(Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only) | | | | |
|---|---|---|---|---|---|---|
| | | | PTF | DEF | | PTF DEF |
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 ☐ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

Dade 1: 06cv20709, AJ Klein

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☒ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

| V. ORIGIN (Place an "X" in One Box Only) | | | | | | | Appeal to District |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 | Judge from Magistrate Judgment |

**VI. CAUSE OF ACTION**

(Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
Plaintiff has filed this complaint against defendants as a result of the defendants' unlawful restraint of trade regarding
the sale of the drug Toprol-XL in violation of 15 U.S.C. § 2 and other federal and state statutes.

LENGTH OF TRIAL via _____ days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**

(See instructions):    JUDGE                    DOCKET NUMBER

DATE

3/31/06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 931751    AMOUNT 3.32 —    APPLYING IFP

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

DOROTHY FERGUSON,
on behalf of herself and all others similarly
situated,

**SUMMONS IN A CIVIL CASE**

Plaintiffs,

CASE NO.:

v.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP, ASTRAZENECA AB,
and AKTIEBOLAGET HASSLE,

Defendants.

_____/

CIV-JORDAN  06  392

/KLEIN

**FILED**

JUN 1 6 2006

U.S. DISTRIC COURT
DISTRICT OF DELAWARE

TO:     Astrazeneca Pharmaceuticals LP
        C T Corporation System, Registered Agent
        1200 South Pine Island Road
        Plantation, FL 33324

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Harke & Clasby LLP
155 South Miami Avenue, Suite 600
Miami, FL 33130
Telephone: 305-536-8220
Facsimile: 305-536-8229

an answer to the complaint which is herewith served upon you, within twenty (20) days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the Complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

Clarence Maddox

**CLERK**

**DATE**

**BY DEPUTY CLERK**

## RETURN OF SERVICE

Service of the Summons and Complaint was made by me[1]    Date: _____

Name of Server: _____    Title: _____

_____    Served personally upon the defendant. Place where served: _____
_____

_____    Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____
_____

_____    Returned unexecuted: _____
_____
_____

_____    Other (specify): _____
_____

### STATEMENT OF SERVICE FEES

Travel: _____    Services: _____    Total: _____

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on    _____

Date    Signature of Server

_____

Address of Server

_____

[1]As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# United States District Court



SOUTHERN DISTRICT OF FLORIDA

DOROTHY FERGUSON,
on behalf of herself and all others similarly
situated,

Plaintiffs,

v.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP, ASTRAZENECA AB,
and AKTIEBOLAGET HASSLE,

Defendants.

_____/

**SUMMONS IN A CIVIL CASE**

CASE NO.:

**CIV-JORDAN**

*KLEIN*

TO:     Astrazeneca LP
        C T Corporation System, Registered Agent
        1200 South Pine Island Road
        Plantation, FL 33324

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

        Harke & Clasby LLP
        155 South Miami Avenue, Suite 600
        Miami, FL 33130
        Telephone: 305-536-8220
        Facsimile: 305-536-8229

an answer to the complaint which is herewith served upon you, within twenty (20) days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the Complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

Clarence Maddox

**CLERK**

BY DEPUTY CLERK

**DATE**

## RETURN OF SERVICE

Service of the Summons and Complaint was made by me[1]   Date: _____

Name of Server: _____   Title: _____

_____   Served personally upon the defendant. Place where served: _____

_____   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

_____   Returned unexecuted: _____

_____   Other (specify): _____

## STATEMENT OF SERVICE FEES

Travel: _____   Services: _____   Total: _____

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____   _____

Date   Signature of Server

_____

Address of Server

---

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# United States District Court

SOUTHERN DISTRICT OF FLORIDA

DOROTHY FERGUSON,

**SUMMONS IN A CIVIL CASE**

on behalf of herself and all others similarly
situated,

Plaintiffs,

CASE NO.:

v.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP, ASTRAZENECA AB,
and AKTIEBOLAGET HASSLE,

Defendants.

_____/

TO:     Astrazeneca AB
        C T Corporation System, Registered Agent
        1200 South Pine Island Road
        Plantation, FL 33324

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

> Harke & Clasby LLP
> 155 South Miami Avenue, Suite 600
> Miami, FL 33130
> Telephone: 305-536-8220
> Facsimile: 305-536-8229

an answer to the complaint which is herewith served upon you, within twenty (20) days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the Complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

Clarence Maddox

**CLERK**

**DATE**

**BY DEPUTY CLERK**

## RETURN OF SERVICE

Service of the Summons and Complaint was made by me[1]   Date: _____
Name of Server: _____     Title: _____

_____   Served personally upon the defendant. Place where served: _____

_____   Left copies thereof at the defendant's dwelling house or usual place of abode with a person of
         suitable age and discretion then residing therein.

         Name of person with whom the summons and complaint were left: _____

_____   Returned unexecuted: _____

_____   Other (specify): _____

### STATEMENT OF SERVICE FEES

Travel: _____   Services: _____   Total: _____

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing
information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____
             Date                              Signature of Server


                                               Address of Server

---

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.



# United States District Court

SOUTHERN DISTRICT OF FLORIDA

DOROTHY FERGUSON,
on behalf of herself and all others similarly
situated,

**SUMMONS IN A CIVIL CASE**

        Plaintiffs,

CASE NO.:

V.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP, ASTRAZENECA AB,
and AKTIEBOLAGET HASSLE,





        Defendants.

_____/

TO :     Aktiebolaget Hassle, in care of:
        Astrazeneca AB, Inc.
        1200 South Pine Island Road
        Plantation, FL 33324

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

        Harke & Clasby LLP
        155 South Miami Avenue, Suite 600
        Miami, FL 33130
        Telephone: 305-536-8220
        Facsimile: 305-536-8229

an answer to the complaint which is herewith served upon you, within twenty (20) days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against
you for the relief demanded in the Complaint. You must also file your answer with the Clerk of this Court within a
reasonable period of time after service.

Clorence Maddox

**CLERK**

BY DEPUTY CLERK

**DATE**

## RETURN OF SERVICE

| Service of the Summons and Complaint was made by me[1] | Date: |
|---|---|
| Name of Server: | Title: |

___ Served personally upon the defendant. Place where served: _____

___ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

___ Returned unexecuted: _____

___ Other (specify): _____

### STATEMENT OF SERVICE FEES

Travel: _____    Services: _____    Total: _____

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____

Date                            Signature of Server

Address of Server

---

[1] As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**NIGHT BOX
FILED**

~~APR 1 0 2006~~

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

DOROTHY FERGUSON,
on behalf of herself and all others
similarly situated,
Plaintiff,                                      CASE NO: 06-20709-CIV-JORDAN

v.

ASTRAZENECA PHARMACEUTICALS L.P.,
ASTRAZENECA LP,
ASTRAZENECA AB, and
AKTIEBOLAGET HASSLE,
Defendants.
_____/

## UNOPPOSED MOTION TO EXTEND TIME
## TO RESPOND TO COMPLAINT

Defendants in the above-styled action, by their undersigned attorneys and with the

agreement of counsel for plaintiffs, hereby move the Court to enter an Order extending

until May 26, 2006 the time to respond (by answer, motion to dismiss, or otherwise) to

the "Class Action Complaint."

AstraZeneca has requested this additional time in good faith and not for purpose

of delay, but in order to have sufficient time to fashion an appropriate and cogent

response to the allegations and claims made in the complaint. The factual allegations

raise issues relating, among other things, to the Hatch-Waxman Amendments to the

Food, Drug and Cosmetic Act, FDA approval of drug applications, the patent listing

process, and patent-related litigation. The complaint brings five causes of action, with

two of these on behalf of a putative nationwide class and three on behalf of a putative

Florida subclass. The claims on behalf of the putative nationwide class arise under § 2 of

the Sherman Antitrust Act and § 16 of the Clayton Act (Count 1), as well as under



Florida common law for unjust enrichment (Count 5). The claims on behalf of the

putative Florida subclass arise under the Florida Antitrust Act (Counts 2 and 3), and the

Florida Unfair and Deceptive Trade Practices Act (Counts 2 through 4). In connection

with these various claims, the complaint seeks declaratory and injunctive relief,

restitution, disgorgement and imposition of a constructive trust, damages, multiple

damages, and treble damages, plus attorneys fees and costs.

## Certificate of Conference

The undersigned counsel for AstraZeneca has conferred with plaintiffs' counsel

who has agreed to an extension through and including May 26, 2006 for it to respond to

the Complaint, and does not oppose the instant motion.

WHEREFORE, AstraZeneca respectfully requests that the Court enter an Order

extending the time for it to respond to the Complaint through and including May 26,

2006. A proposed order to that effect is attached.

Respectfully submitted,

Chris S. Coutroulis
Florida Bar No. 300705
Robert L. Ciotti
Florida Bar No. 333141
Carlton Fields, P.A.
Corporate Center Three at International
Plaza
Suite 1000
4221 W. Boy Scout Boulevard
Tampa, Florida 33607-5736
Telephone: (813) 223-7000
Facsimile: (813) 229-4133

Counsel for Defendants

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served for

next-day hand-delivery via Federal Express to Lance A. Harke, P.A., Sarah Clasby Engel,

P.A., and Howard M. Bushman, Esq., Harke & Clasby LLP, 155 South Miami Ave.,

Suite 600, Miami, Florida 33130, this 10th day of April, 2006.

Attorney

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

DOROTHY FERGUSON,
on behalf of herself and all others
similarly situated,
Plaintiff,                                    CASE NO: 06-20709-CIV-JORDAN

v.

ASTRAZENECA PHARMACEUTICALS L.P.,
ASTRAZENECA LP,
ASTRAZENECA AB, and
AKTIEBOLAGET HASSLE,
Defendants.
_____/

**ORDER ON
UNOPPOSED MOTION TO EXTEND TIME
TO RESPOND TO COMPLAINT**

This cause came before the Court on Defendants' Unopposed Motion to Extend,

until May 26, 2006, Defendants' Time to Respond to the Complaint in the above-styled

action.

The Court being fully briefed and otherwise advised in the Premises, it is

HEREBY ORDERED AND ADJUDGED that Defendants shall have through and

including May 26, 2006 to serve their response (by answer, motion to dismiss, or

otherwise) to the Complaint.

Done and Ordered in Chambers this ____ day of _____, 2006.


_____
District Judge

cc.    Counsel for Plaintiffs
       Counsel for Defendants

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**



DOROTHY FERGUSON,
on behalf of herself and all others
similarly situated,
Plaintiff,

CASE NO: 06-20709-CIV-JORDAN

v.

0 6 - 3 9 2

ASTRAZENECA PHARMACEUTICALS L.P.,
ASTRAZENECA LP,
ASTRAZENECA AB, and
AKTIEBOLAGET HASSLE,
Defendants.

_____/

**FILED**

JUN 1 6 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

**ORDER ON
UNOPPOSED MOTION TO EXTEND TIME
TO RESPOND TO COMPLAINT**

This cause came before the Court on Defendants' Unopposed Motion to Extend,

until May 26, 2006, Defendants' Time to Respond to the Complaint in the above-styled

action. [D E 3]

The Court being fully briefed and otherwise advised in the Premises, it is

HEREBY ORDERED AND ADJUDGED that Defendants shall have through and

including May 26, 2006 to serve their response (by answer, motion to dismiss, or

otherwise) to the Complaint.

Done and Ordered in Chambers this _13_ day of _April_, 2006.

_____
District Judge

cc.    Counsel for Plaintiffs
       Counsel for Defendants



FILED by _EG_ D.C.
ELECTRONIC

**May 18 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. · MIAMI

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

DOROTHY FERGUSON, on behalf of
herself and all others similarly situated,

               Plaintiffs,

v.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP,
ASTRAZENECA AB, and
AKTIEBOLAGET HASSLE,

               Defendants.
_____/

Case No. 06-20709-Civ-Jordan

0 6      3 9 2



FILED

JUN 1 6 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### UNOPPOSED MOTION AND MEMORANDUM OF LAW
### OF DEFENDANTS ASTRAZENECA PHARMACEUTICALS LP,
### ASTRAZENECA LP, ASTRAZENECA AB, AND
### AKTIEBOLAGET HASSLE FOR TRANSFER OF VENUE

      Defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, and

Aktiebolaget Hassle (collectively, "Defendants"), by and through their undersigned counsel

respectfully move this court to transfer the venue of this action from the United States District

Court for the Southern District of Florida to the United States District Court for the District of

Delaware. This motion is unopposed. As grounds for this motion, Defendants state as follows:

      1.     Plaintiff, Dorothy Ferguson on behalf of herself and all others similarly situated

("Ferguson"), filed a class action complaint against Defendants on or about March 20, 2006 in

the United States District Court for the Southern District of Florida. The Complaint alleges that

Defendants violated federal antitrust law, the Florida Antitrust Act, Fla. Stat. §§ 542.15, *et seq.*,

and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*, through

**5/RA**

the manufacture and marketing of the prescription drug Toprol-XL, an extended-release metoprolol succinate.

2.      Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP are both limited partnerships organized and existing under the laws of Delaware.      Defendants AstraZeneca AB and Aktiebolaget Hassle are both corporations organized and existing under the laws of Sweden.

3.      Ferguson is a resident of Miami-Dade County, Florida.

4.      Ferguson allegedly paid some or all of the purchase price of one or more prescriptions of Toprol-XL, allegedly making Ferguson an "end-payor."

5.      Currently, nine (9) end-payor actions against Defendants have been consolidated in the United States District Court for the District of Delaware (the "Delaware Court") pursuant to Federal Rule of Civil Procedure 42(a). The consolidated action is styled *In re: Metoprolol Succinate End-Payor Antitrust Litigation*, Civil Action No. 06-71 (GMS). The Delaware Court lists the captions and case numbers for those eight (8) actions in Pretrial Order No. 1 Regarding Consolidation of End-Payor Actions ("Pretrial Order No. 1," copy attached as Exhibit A), entered on April 5, 2006. The caption and case numbers for the consolidated end-payor actions include:

> MARK S. MERADO, on behalf of himself and all other persons and entities similarly situated, Plaintiff, v. ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, ASTRAZENECA AB, and AKTIEBOLAGET HASSLE, Defendants. C.A. No. 06-71 (GMS);
>
> NEIL LEFTON, on behalf of himself and all others similarly situated, Plaintiff, v. ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, ASTRAZENECA AB, and AKTIEBOLAGET HASSLE, Defendants. C.A. No. 06-73 (GMS);

-2-

MARY ANNE GROSS, on behalf of herself and all others similarly situated, Plaintiff, v. ASTRAZENECA AB, AKTIEBOLAGET HASSLE, and ASTRAZENECA LP, Defendants. C.A. No. 06-81 (GMS);

INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS LOCAL 22 HEALTH & WELFARE FUND; AMERICAN FEDERATION OF STATE, COUNTY, AND MUNICIPAL EMPLOYEES DISTRICT COUNCIL 47 HEALTH AND WELFARE FUND; and UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 1776 AND PARTICIPATING EMPLOYERS HEALTH AND WELFARE FUND, on behalf of themselves and all others similarly situated, Plaintiffs, v. ASTRAZENECA PHARMACEUTICALS LP; ASTRAZENECA LP; ASTRAZENECA AB; and AKTIEBOLAGET HASSLE, Defendants. C.A. No. 06-83 (GMS);

A.F. OF L. AGC BUILDING TRADE WELFARE PLAN and SHEET METAL WORKERS LOCAL 441 HEALTH & WELFARE PLAN, on behalf of themselves and all others similarly situated, Plaintiffs, v. ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, ASTRAZENECA AB, and AKTIEBOLAGET HASSLE, Defendants. C.A. No. 06-86 (GMS);

UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS, LOCAL NO. 74 HEALTH AND PENSION FUND and UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS, LOCAL NO. 203 HEALTH AND PENSION FUND, on behalf of themselves and all others similarly situated, Plaintiffs, v. ASTRAZENECA     AB,     AKTIEBOLAGET     HASSLE,     and ASTRAZENECA LP, Defendants. C.A. No. 06-93 (GMS);

PLUMBERS AND PIPEFITTERS LOCAL 572 PENSION FUND, on behalf of itself and all others similarly situated, Plaintiff, v. ASTRAZENECA PHARMACEUTICALS LP, a Delaware Corporation, ASTRAZENECA LP, ASTRAZENECA AB, AKTIEBOLAGET HASSLE, Defendants. C.A. No. 06-102 (GMS); and

NATIONAL JOINT POWERS ALLIANCE, on behalf of itself and all others similarly situated, Plaintiffs, v. ASTRAZENECA AB, a Swedish Corporation, AKTIEBOLAGET HASSLE, a Swedish Corporation, ASTRAZENECA LP, a Delaware Limited Partnership, and ASTRAZENECA PHARMACEUTICALS, LP, a Delaware Limited Partnership, Defendants. C.A. No. 06-116 (GMS).

6.    Pretrial Order No. 1 states, in pertinent part, that "[a]ny subsequently filed case

brought on behalf of a proposed class of end-payors of Toprol-XL, that arises out of the same

operative facts as the above-captioned actions, shall be consolidated with these actions and be subject to . . . Pretrial Order No. 1." Pretrial Order No. 1 at 5.

7.      A ninth case in Delaware was consolidated with the first eight (8) by Order ("Stipulation and Order," copy attached as Exhibit B), entered on April 28, 2006.

8.      Each of the nine (9) end-payor actions in the Delaware Court involve allegations of federal antitrust and state consumer protection law violations similar to the allegations in the instant case.

9.      Currently, there is an action involving similar allegations pending in the United States District Court for the District of Massachusetts (the "Massachusetts Court") styled THELMA CLEMENT, on behalf of herself and all others similarly situated, Plaintiff, v. ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, ASTRAZENECA AB, and AKTIEBOLAGET HASSLE, Defendants, Case No. 06-40041-FDS. The parties in that case filed a Stipulation to Transfer Action to District of Delaware on May 9, 2006 in an attempt to consolidate Thelma Clement's case with *In re: Metoprolol Succinate End-Payor Antitrust Litigation*, Civil Action No. 06-71 (GMS), in the Delaware Court.

10.     Because the instant case involves allegations similar to the case pending in the Massachusetts Court and to the nine (9) end-payor actions in the Delaware Court, it is appropriate for the venue of this case to be transferred to the Delaware Court, whereby the instant case would become part of the docket of the Delaware Court, be consolidated with the existent nine (9) end-payor actions styled *In re: Metoprolol Succinate End-Payor Antitrust Litigation*, Civil Action No. 06-71 (GMS), and be subject to Pretrial Order No. 1.

11.     Counsel for Plaintiff has represented to the undersigned counsel for Defendants that they do not object to or otherwise oppose the relief sought in this motion.

WHEREFORE, Defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, and Aktiebolaget Hassle, respectfully request that the Court enter an Order transferring the above-captioned matter to the Delaware Court.

## MEMORANDUM OF LAW

A motion to transfer venue is governed by 28 U.S.C. § 1404(a). In particular, § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Thus, the "threshold consideration when deciding the merits of a motion to transfer is whether the case may have been brought in the desired district of transfer," here the Delaware Court. *Meterlogic, Inc. v. Copier Solutions, Inc.*, 185 F. Supp. 2d 1292, 1299 (S.D. Fla. 2002) (citing *Miot v. Kechijian*, 830 F. Supp. 1460, 1465 (S.D. Fla. 1993); *Garay v. BRK Electronics*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991)). That requirement is easily met here given that Defendants are subject to jurisdiction in Delaware, venue is appropriate in Delaware, and Defendants are amenable to service in Delaware. *See Meterlogic*, 185 F. Supp. 2d at 1299, 1300. Moreover, no party will be prejudiced by this transfer of venue. Plaintiff does not object to the relief requested and the interests of justice and judicial economy weigh in favor of the granting of this motion. For these reasons, Defendants respectfully request that this case be transferred to the Delaware Court.

## CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned counsel for Defendants certifies that counsel for Plaintiff have been consulted and does not oppose the relief sought in this motion.

Respectfully submitted,

TPA#2211745.2                                                    - 5 -

*/s/ Chris S. Coutroulis*
Chris S. Coutroulis
Florida Bar Number 300705
Robert L. Ciotti
Florida Bar Number 333141
Carlton Fields, P.A.
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5736
E-Mail: ccoutroulis@carltonfields.com
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
Attorneys for AstraZeneca Pharmaceuticals LP,
AstraZeneca  LP,  AstraZeneca  AB,  and
Aktiebolaget Hassle

## CERTIFICATE OF SERVICE

I hereby certify that on <u>May 18, 2006</u>, I electronically filed the foregoing with the Clerk

of the Court. I further certify that I mailed the foregoing document by first class mail to counsel

of record listed on the attached service list.

*/s/ Chris S. Coutroulis*
Attorney

## SERVICE LIST

### Case No. 06-20709-Civ-Jordan

Lance A. Harke, P.A.
Harke & Clasby LLP
155 South Miami Avenue
Suite 600
Miami, FL 33130

Sarah Clasby Engel, P.A.
Harke & Clasby LLP
155 South Miami Avenue
Suite 600
Miami, FL 33130

Howard M. Bushman, Esq.
Harke & Clasby LLP
155 South Miami Avenue
Suite 600
Miami, FL 33130

# EXHIBIT A



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MARK S. MERADO, on behalf of himself and all other persons and entities similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 06-71 (GMS) ) |
| ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, ASTRAZENECA AB, and AKTIEBOLAGET HASSLE, | ) ) ) ) |
| Defendants. | ) ) |

| | |
|---|---|
| NEIL LEFTON, on behalf of himself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 06-73 (GMS) ) |
| ASTRAZENECA PHARMACEUTICALS LP, ASTRAZENECA LP, ASTRAZENECA AB, and AKTIEBOLAGET HASSLE, | ) ) ) |
| Defendants. | ) ) |

RECEIVED

MAR 3 1 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MARY ANNE GROSS, on behalf of herself and all others similarly situated, | ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 06-81 (GMS) ) |
| ASTRAZENECA AB, AKTIEBOLAGET HASSLE, and ASTRAZENECA LP, | ) ) ) |
| Defendants. | ) ) |

INTERNATIONAL ASSOCIATION OF FIRE )
FIGHTERS LOCAL 22 HEALTH & WELFARE )
FUND; AMERICAN FEDERATION OF )
STATE, COUNTY AND MUNICIPAL )
EMPLOYEES DISTRICT COUNCIL 47 )
HEALTH AND WELFARE FUND; and )
UNITED FOOD AND COMMERCIAL )
WORKERS UNION LOCAL 1776 AND )
PARTICIPATING EMPLOYERS HEALTH )
AND WELFARE FUND, on behalf of ) C.A. No. 06-83 (GMS)
themselves and all others similarly situated, )
                                            )
              Plaintiffs, )
        v. )
                                            )
ASTRAZENECA PHARMACEUTICALS LP; )
ASTRAZENECA LP; ASTRAZENECA AB; )
and AKTIEBOLAGET HASSLE, )
                                            )
              Defendants. )
_____)

A.F. OF L. AGC BUILDING TRADE )
WELFARE PLAN and SHEET METAL )
WORKERS LOCAL 441 HEALTH & )
WELFARE PLAN, on behalf of themselves and )
all others similarly situated, )
                                            ) C.A. No. 06-86 (GMS)
              Plaintiffs, )
        v. )
                                            )
ASTRAZENECA PHARMACEUTICALS LP, )
ASTRAZENECA LP, ASTRAZENECA AB, and )
AKTIEBOLAGET HASSLE, )
                                            )
              Defendants. )
_____)

2

| | | |
|---|---|---|
| UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS, LOCAL NO. 74 HEALTH AND PENSION FUND and UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS, LOCAL NO. 203 HEALTH AND PENSION FUND, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) | |
| | ) | C.A. No. 06-93 (GMS) |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| ASTRAZENECA AB, AKTIEBOLAGET HASSLE, and ASTRAZENECA LP, | ) ) ) | |
| Defendants. | ) ) ) | |
| PLUMBERS AND PIPEFITTERS LOCAL 572 PENSION FUND, on behalf of itself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 06-102 (GMS) |
| ASTRAZENECA PHARMACEUTICALS LP, a Delaware Corporation, ASTRAZENECA LP, ASTRAZENECA AB, AKTIEBOLAGET HASSLE, | ) ) ) ) ) | |
| Defendants. | ) ) | |

3

| | |
|---|---|
| NATIONAL JOINT POWERS ALLIANCE,<br>on behalf of itself and all others similarly situated,<br><br><br>Plaintiffs,<br><br>v.<br><br>ASTRAZENECA AB, a Swedish Corporation,<br>AKTIEBOLAGET HASSLE, a Swedish<br>Corporation, ASTRAZENECA LP, a<br>DelawareLimited Partnership, and<br>ASTRAZENECA PHARMACEUTICALS, LP, a<br>Delaware Limited Partnership.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 06-116 (GMS)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PRETRIAL ORDER NO. 1 REGARDING
### CONSOLIDATION OF END-PAYOR ACTIONS

WHEREAS, plaintiffs have filed Complaints (the "Complaints") in the above-referenced actions for alleged violations of the antitrust and consumer protection laws involving the brand name prescription drug Toprol-XL® (metoprolol succinate) extended release tablets and its generic equivalents, pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, and the antitrust and/or consumer protection statutes of certain states;

WHEREAS, defendants intend to deny such allegations;

WHEREAS, plaintiffs are end-payors of Toprol-XL and seek to proceed on behalf of a proposed class of similarly-situated end-payors; and

WHEREAS, plaintiffs and defendants believe consolidation of the Complaints will avoid unnecessary costs and promote the efficient conduct of proceedings therein;

NOW, THEREFORE, THE COURT ORDERS as follows:

4

## I. CONSOLIDATION AND COORDINATION

1. The actions identified in the caption hereto are consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes. Any subsequently filed case brought on behalf of a proposed class of end-payors of Toprol-XL, that arises out of the same operative facts as the above-captioned actions, shall be consolidated with these actions and be subject to this Case Management *PRETRIAL* Order No. 1 (the "Order"). The current actions and those that may be consolidated with the current actions are collectively referred to as the "Consolidated End-Payor Actions."

2. The terms of this Order shall not have the effect of making any person, firm or corporation a party to any action in which he, she or it has not been named, served or added as such, in accordance with the Federal Rules of Civil Procedure. The terms of this Order and the consolidation ordered herein shall not constitute a waiver by any party of any claims in or defenses to any of the actions.

## II. CAPTION OF CASES

1. Every pleading filed in the Consolidated End-Payor Actions shall bear the following caption:

IN RE: METOPROLOL SUCCINATE          )
END-PAYOR ANTITRUST LITIGATION       )          Civil Action No. 06-71 (GMS)
                                     )
                                     )
THIS DOCUMENT RELATES TO:            )
                                     )

2. When a pleading or other court paper filed in the Consolidated End-Payor Actions is intended to apply to all actions therein, the words "All Actions" shall appear immediately after the words "THIS DOCUMENT RELATES TO:" in the caption set out above. When a pleading or

5

other court paper is intended to be applicable only to one, or some, but not all of such actions, the party filing the document shall indicate the action(s) to which the document is intended, by plaintiff name(s) and docket number(s).

## III.   MASTER DOCKET, MASTER FILE AND SEPARATE ACTION DOCKETS

1.      A Master Docket and a Master File are hereby established for the Consolidated End-Payor Actions.

2.      Documents shall bear the caption of the actions in which the authors intend the documents to be served and/or filed. Entries shall be made on the dockets, and copies of documents placed in the files, of those actions whose captions appear on the pleading or court paper.

3.      Separate dockets shall be maintained for each of the Consolidated End-Payor Actions and entries shall be made therein in accordance with the regular procedures of the Clerk of this Court, except as modified by this Order or a future order of this Court.

4.      When a pleading or other court paper is filed and the caption shows that it is to be applicable to "All Actions," the Clerk shall file such pleading or other court paper in the Master File and note such filing in the Master Docket. No further copies need to be filed or docket entries made.

5.      When a pleading or other court paper is filed and the caption shows that it is applicable to fewer than all actions that are Consolidated before this Court, the Clerk needs to file such pleading or other court paper only in the Master File, but nonetheless shall note such filing in both the Master Docket and in the docket of each such action.

6.      Within sixty (60) days of the entry of this Order, Co-Lead Counsel shall file with

6

the Court a Consolidated Complaint in the Consolidated End-Payor Actions, which shall serve as
the operative Complaint in the Consolidated End-Payor Actions, unless subsequently amended.
Upon such filing, all Defendants will be deemed to have accepted service thereof, without waiver
of any jurisdictional or other defenses.

7.    Defendants shall answer, move or otherwise plead to the Consolidated Complaint
within sixty (60) days of the filing of such Consolidated Complaint.

8.    Upon entry of this Order, all Defendants will be deemed to have accepted service of
the Complaints listed in Schedule A hereto, without waiver of any jurisdictional or other defenses.
Defendants shall have no obligation to answer, move or otherwise plead with respect to any of the
previously filed Complaints in the Consolidated Actions or to the complaints subsequently filed in
cases that are consolidated with these end-payor actions in this Court.

## IV.    NEWLY FILED OR TRANSFERRED ACTIONS

9.    This Court requests the assistance of counsel in calling to the attention of the Clerk
of the Court the filing or transfer of any case which might properly be consolidated as part of the
Consolidated End-Payor Actions.

10.    When a case that relates to the subject matter of the Consolidated End-Payor
Actions is hereafter filed in this Court or transferred here from another court, the Clerk of this
Court shall:

a.    Make an appropriate entry in the Master Docket;

b.    Place a copy of this Order in the separate file for such action;

7

c.      Mail a copy of this Order to the attorney(s) for the plaintiff(s) in the newly

filed or transferred case, and to the attorneys for any new defendant(s) in the newly filed or

transferred case; and

d.      Mail a copy of the Order of assignment to Liaison Counsel designated in ¶

17(a), and to counsel for defendants in the Consolidated End-Payor Actions.

11.     This Order shall apply to each such case referenced in ¶¶ 1 and 14 unless a party

objecting to the coordination or consolidation of such case or to provision of this Order shall,

within ten (10) days after the date upon which an Order is mailed to counsel for such party, file an

application for relief from this provision and this Court deems it appropriate to grant such

application.

## V.     ORGANIZATION OF COUNSEL

1.      The Consolidated End-Payor Actions are listed in Schedule A attached hereto.

Schedule A shall be amended to include any action(s) brought on behalf of a proposed class of

end-payors of Toprol-XL subsequently filed in, or transferred to, this Court.

2.      The Court designates the following to act on behalf of all plaintiffs in the

Consolidated End-Payor Actions, with the responsibilities hereinafter described:

a.      As Co-Liaison Counsel:

> **PRICKETT, JONES & ELLIOTT, PA**
> 1310 King Street
> P.O. Box 1328
> Wilmington, DE 19899-1328

> **CHIMICLES & TIKELLIS, LLP**
> One Rodney Square
> P.O. Box 1035
> Wilmington, DE 19899

8

b.    As Co-Lead Counsel:

**SCHIFFRIN & BARROWAY, LLP**
280 King of Prussia Road
Radnor, PA 19087

**FINE, KAPLAN AND BLACK, R.P.C.**
1835 Market Street, 28th Floor
Philadelphia, Pennsylvania 19103

**MILBERG WEISS BERSHAD & SCHULMAN, LLP**
Michael M. Buchman
J. Douglas Richards
One Pennsylvania Plaza
New York, NY 10119

3.    Defendants' counsel of record are:

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Jack B. Blumenfeld
Karen Jacobs Louden
Chase Manhattan Centre, 18th Floor
1201 N. Market Street
Wilmington, DE 19899

**DAVIS POLK & WARDWELL**
Arthur F. Golden
Ronan P. Harty
450 Lexington Avenue
New York, NY 10017

4.    Liaison Counsel in the Consolidated End-Payor Actions are charged with performing, on behalf of all plaintiffs in the Consolidated End-Payor Actions, administrative matters such as communications with clerical staff of the Court and with other counsel (including receiving and distributing notices, orders, motions and briefs on behalf of the group), advising parties of developments in the case and otherwise assisting in the coordination of activities and positions.

5.    Co-Lead Counsel in the Consolidated End-Payor Actions, working together in a

9

coordinated fashion, shall have sole authority over the following matters on behalf of all plaintiffs in the Consolidated End-Payor Actions: (a) convening meetings of counsel; (b) initiation, response, scheduling, briefing and argument of all motions; (c) the scope, order and conduct of all discovery proceedings; (d) such work assignments to other counsel as they may deem appropriate; (e) collecting time and expense reports from such other counsel on a periodic basis; (f) the retention of experts; (g) designation of which attorneys may appear at hearings and conferences with the Court; (h) the timing and substance of any settlement negotiations with defendants; (i) the allocation of fees, if any are awarded by the Court; and (j) other matters concerning the prosecution of the Consolidated End-Payor Actions. Co-Lead Counsel shall be responsible for the overall direction and administration of the Consolidated End-Payor Actions.

6. No motion shall be initiated or filed on behalf of any plaintiff in the Consolidated End-Payor Actions except through the respective Co-Lead Counsel.

7. Co-Lead Counsel and Liaison Counsel in the Consolidated End-Payor Actions, or their designees, shall have sole authority to communicate with Defendants' Counsel and the Court on behalf of all plaintiffs in the Consolidated End-Payor Actions. Defendants' Counsel may rely on all agreements made with Co-Lead Counsel in the Consolidated End-Payor Actions, and such agreements shall be binding on all counsel in the Consolidated End-Payor Actions.

8. The organizational structure of plaintiffs' counsel established in ¶ 17 herein shall likewise apply to any and all actions described in ¶¶ 1 and 14.

9. **Time Records.** All plaintiffs' counsel in the Consolidated End-Payor Actions shall keep contemporaneous time records and shall periodically submit summaries or other records of time and expenses to Co-Lead Counsel, or their designee.

10

## VI.    FILING AND SERVICE OF DOCUMENTS

1.    The Parties shall file and serve all papers in accordance with the Electronic Case Filing Policies and Procedures ("ECF Procedures") of this Court. Defendants' service of papers by ECF Procedures on each Co-Lead Counsel and Liaison Counsel constitutes service on Plaintiffs. Plaintiffs shall serve papers on Defendants by ECF Procedures. To the extent that papers are filed under seal, the papers shall be served on counsel listed in paragraphs 17 and 18.

2.    Notwithstanding any other provision herein, time shall be computed according to the Federal Rules of Civil Procedure and local rules of the United States District Court for the District of Delaware.

## VII.    PRESERVATION OF DOCUMENTS

1.    During the pendency of this litigation, or until further order of this Court, the parties shall take reasonable steps to preserve all documents within their possession, custody or control, including computer and electronically generated and stored information and materials such as computerized data and electronic mail, containing information that is relevant to or may lead to the discovery of information relevant to the subject matter of the pending litigation. Nothing in this paragraph is intended to change or otherwise modify the parties' obligations under the Federal Rules of Civil Procedure.

## VIII.    CONFIDENTIALITY ORDER

1.    Until entry of a Confidentiality Order, the parties will follow Local Rule 26.2.

## IX.    DIRECT PURCHASER ACTIONS

1.    The parties acknowledge that a number of purported class actions have been filed in this Court against the Defendants on behalf of direct purchasers of Toprol-XL (the Direct

11

Purchaser Actions). The parties in the Direct Purchaser Actions have negotiated and submitted to the Court a proposed ~~case management~~ <ins>PRETRIAL</ins> <ins>No. 1</ins> order that is substantially similar to this Order. In that regard, the Defendants may request the Court to consolidate or coordinate the Direct and End-Payor Actions and have them governed by a consolidated ~~case management~~ <ins>PRETRIAL</ins> <ins>No. 1</ins> order. Plaintiffs reserve the right to object to such a request.

## X.    MODIFICATION

1.    Any party may, for good cause shown, move for modification of any provision of this Order.

SO ORDERED this $\underline{5}^{th}$ day of $\underline{\textit{April}}$, 2006.



United States District Judge

508227

```
      FILED

   APR  5 2006

  U.S. DISTRICT COURT
DISTRICT OF DELAWARE
```

12

## SCHEDULE A

*Mark S. Merado, on behalf of himself and all other persons and entities similarly situated v. AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, and Aktiebolaget Hassle,* Docket No. 06-71 (D. Del.), filed on February 3, 2006.

*Neil Lefton, on behalf of himself and all others similarly situated v. AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, and Aktiebolaget Hassle,* Docket No. 06-73 (D. Del.), filed on February 3, 2006.

*Mary Anne Gross, on behalf of herself and all others similarly situated v. AstraZeneca AB, Aktiebolaget Hassle, and AstraZeneca LP,* Docket No. 06-81 (D. Del.), filed on February 6, 2006.

*International Association of Fire Fighters Local 22 Health & Welfare Fund; American Federation of State, County and Municipal Employees District Council 47 Health and Welfare Fund; and United Food and Commercial Workers Union Local 1776 and Participating Employers Health and Welfare Fund, on behalf of themselves and all others similarly situated v. AstraZeneca Pharmaceuticals L; AstraZeneca LP; AstraZeneca AB; and Aktiebolaget Hassle,* Docket No. 06-83 (D. Del.), filed on February 7, 2006.

*A.F. of L. AGC Building Trade Welfare Plan and Sheet Metal Workers Local 441 Health & Welfare Plan, on behalf of themselves and all others similarly situated v. AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, and Aktiebolaget Hassle,* Docket No. 06-86 (D. Del.), filed on February 8, 2006.

*United Union of Roofers, Waterproofers and Allied Workers, Local No. 74 Health and Pension Fund and United Union of Roofers, Waterproofers and Allied Workers, Local No. 203 Health and Pension Fund, on behalf of themselves and all others similarly situated v. AstraZeneca AB, Aktiebolaget Hassle, and AstraZeneca LP,* Docket No. 06-93 (D. Del.), filed on February 9, 2006.

*Plumbers and Pipefitters Local 572 Pension Fund, on behalf of itself and all others similarly situated v. AstraZeneca Pharmaceuticals LP, a Delaware Corporation, AstraZeneca LP, AstraZeneca AB, Aktiebolaget Hassle,* Docket No. 06-102 (D. Del.), filed on February 15, 2006.

*National Joint Powers Alliance, on behalf of itself and all others similarly situated v. AstraZeneca AB, a Swedish Corporation, Aktiebolaget Hassle, a Swedish Corporation, AstraZeneca LP, a Delaware Limited Partnership, and AstraZeneca Pharmaceuticals LP, a Delaware Limited Partnership,* Docket No. 06-116 (D. Del.), filed on February 23, 2006.

13

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

DISTRICT 1199P HEALTH AND WELFARE )
PLANT on behalf of itself and all others )
similarly situated, )
                                       )
            Plaintiff,                 )    C.A. No. 06-214 (GMS)
                                       )
    v.                                 )
                                       )
ASTRAZENECA PHARMACEUTICALS, LP,       )
ASTRAZENECA LP, ASTRAZENECA AB         )        APR 2 7 2006
and AKTIEBOLAGET HASSLE,               )
                                       )
            Defendants.                )

### STIPULATION AND ORDER

IT IS HEREBY STIPULATED by the parties, subject to the approval of the

Court, that this end-payor action shall be consolidated and coordinated with the related end-

payor actions pursuant to Section IV of Pretrial Order No. 1 Regarding End-Payor Actions dated

April 5, 2006 ("Pretrial Order No. 1") (D.I. 13 in C.A. No. 06-71 (GMS)).

Pretrial Order No. 1 contemplates that all related end-payor actions will be

consolidated and that the plaintiffs will file a Consolidated Amended Complaint, which will be

the sole operative complaint for all these actions. Pretrial Order No. 1 also states that the Clerk

of the Court shall, *inter alia*, make appropriate entry for this action on the master docket (06-71

(GMS)), place a copy of Pretrial Order No. 1 in the separate file for this action, and mail a copy

of the Order of assignment to Liaison counsel and counsel for defendants. (D.I. 13 at ¶ 10).[1]

Co-Lead Counsel for the other end-payor actions have advised that they have no

objection to the addition of this action to Pretrial Order No. 1.

---

[1]    It is unnecessary for the Clerk to mail a copy of Pretrial Order No. 1 to the plaintiffs in
this action (¶ 10(c)), as plaintiffs already are in possession of the Order.

CHIMICLES & TIKELLIS LLP

/s A. Zachary Naylor
Pamela S. Tikellis (#2172)
A. Zachary Naylor (#4439)
zn@chimicles.com
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899
(302) 656-2500
Attorneys for plaintiffs

April 27, 2006

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Karen Jacobs Louden
Jack B. Blumenfeld (#1014)
Karen Jacobs Louden (#2881)
kjlefiling@mnat.com
Leslie A. Polizoti (#4299)
lpolizoti@mnat.com
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899
(302) 658-9200
Attorneys for defendants

April 27, 2006

SO ORDERED this _____ day of _____, 2006.

Judge Gregory M. Sleet

517373

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 06-20709-CIV-JORDAN

**CLOSED
CIVIL
CASE**



DOROTHY FERGUSON,              )
                              )
        Plaintiff             )
                              )
vs.                           )
                              )
ASTRAZENECA PHARMACEUTICALS    )
LP, et. al.,                  )
                              )
        Defendants            )
_____)

## ORDER TRANSFERRING CASE TO DISTRICT OF DELAWARE

The defendants' unopposed motion to transfer this case to the District of Delaware [D.E. 5]

is GRANTED. This action is TRANSFERRED to the District of Delaware, to be consolidated with *In re:*

*Metoprolol Succinate End-Payor Antitrust Litigation*, Civil Action No. 06-71 (GMS).

DONE and ORDERED in chambers in Miami, Florida, this 23rd day of May, 2006.

*Adalberto Jordan*

Adalberto Jordan
United States District Judge

Copy to:     All counsel of record



**FILED by __DJ__ D.C.**
ELECTRONIC

**May 24 2006**

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.O. OF FLA. - MIAMI

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

$0\ 6\ -\ 3\ 9\ 2$

DOROTHY FERGUSON, on behalf of
herself and all others similarly situated,

Plaintiffs,

Case No. 06-20709-Civ-Jordan

v.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP,
ASTRAZENECA AB, and
AKTIEBOLAGET HASSLE,

Defendants.

_____/



**FILED**

JUN 1 6 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### DEFENDANTS' UNOPPOSED MOTION FOR
### ENLARGEMENT OF TIME WITHIN WHICH TO
### RESPOND TO COMPLAINT AND MEMORANDUM OF LAW

Defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, and

Aktiebolaget Hassle (collectively, "Defendants"), by and through their undersigned counsel,

respectfully move this court for an enlargement of time, as set forth below, within which to

respond (by answer, motion to dismiss, or otherwise) to the "Class Action Complaint," pending

this Court's disposition of Defendants' Unopposed Motion for Transfer of Venue. As grounds

for this motion, Defendants state as follows:

1.      Currently, Defendants' response in the above-captioned matter is due on May 26,

2006.

2.      On May 18, 2006, Defendants filed with this Court an unopposed motion for

transfer of venue seeking the transfer of this matter to the United States Court for the District of

Delaware. If transferred, this matter would be consolidated with *In re: Metoprolol Succinate*

TPA#2221121.2

*End-Payor Antitrust Litigation*, Civil Action No. 06-71 (GMS), a consolidated action currently pending in the District of Delaware that has combined at least nine (9) Toprol-XL end-payor actions involving similar allegations against Defendants.

3.    If consolidated with *In re: Metoprolol Succinate End-Payor Antitrust Litigation*, Civil Action No. 06-71 (GMS), Defendants would be subject to a different scheduling order and would be responding to a consolidated complaint, which has not yet been filed in the consolidated action, rather than to the Complaint in this action.

4.    Because this Court's ruling on the unopposed motion to transfer venue could change the venue and, ultimately, the scheduling in this matter, Defendants respectfully request that they be granted an enlargement of time that results in a response deadline twenty (20) days after this Court's ruling on the unopposed motion to transfer venue.[1]

5.    Counsel for Plaintiff has represented to the undersigned counsel for Defendants that they do not object to the relief sought in this motion.

WHEREFORE, Defendants, AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, and Aktiebolaget Hassle, respectfully request that the Court enter an Order granting an enlargement of time within which Defendants may respond to the Class Action Complaint.

## MEMORANDUM OF LAW

This motion is addressed to the Court's sound discretion. Defendants have requested additional time in good faith and not for purpose of delay in an attempt to avoid unnecessarily duplicative effort. Further, no party will be prejudiced by the enlargement of time requested

---

[1] That new deadline would only be operative if the transfer motion is denied because if it is granted, the schedule in the consolidated actions would apply, as noted.

TPA#2221121.2                                                    - 2 -

whereas Plaintiff does not object to the relief requested and the interests of justice and judicial

economy weigh in favor of the granting of this motion.

## CERTIFICATION

Pursuant to Local Rule 7.1, the undersigned counsel for Defendants certifies that counsel

for Plaintiff has been consulted and does not oppose the relief sought in this motion.

Respectfully submitted,

*/s/ Chris S. Coutroulis*
Chris S. Coutroulis
Florida Bar Number 300705
Robert L. Ciotti
Florida Bar Number 333141
Carlton Fields, P.A.
4221 W. Boy Scout Boulevard, Suite 1000
Tampa, Florida 33607-5736
E-Mail: ccoutroulis@carltonfields.com
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
Attorneys for AstraZeneca Pharmaceuticals LP,
AstraZeneca LP, AstraZeneca AB, and
Aktiebolaget Hassle

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2006, I electronically filed the foregoing with the Clerk

of the Court. I further certify that I mailed the foregoing document by first class mail to counsel

of record listed on the attached service list.

*/s/ Chris S. Coutroulis*
Attorney

## SERVICE LIST

### Case No. 06-20709-Civ-Jordan

Lance A. Harke, P.A.
Harke & Clasby LLP
155 South Miami Avenue
Suite 600
Miami, FL 33130
Fax No. (305) 536-8220

Sarah Clasby Engel, P.A.
Harke & Clasby LLP
155 South Miami Avenue
Suite 600
Miami, FL 33130
Fax No. (305) 536-8220

Howard M. Bushman, Esq.
Harke & Clasby LLP
155 South Miami Avenue
Suite 600
Miami, FL 33130
Fax No. (305) 536-8220

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

DOROTHY FERGUSON, on behalf of
herself and all others similarly situated,

                Plaintiffs,           Case No. 06-20709-Civ-Jordan

v.

ASTRAZENECA PHARMACEUTICALS LP,
ASTRAZENECA LP,
ASTRAZENECA AB, and
AKTIEBOLAGET HASSLE,

                Defendants.
_____/

**ORDER ON UNOPPOSED MOTION FOR ENLARGEMENT**
**OF TIME WITHIN WHICH TO RESPOND TO COMPLAINT**

      This cause came before the Court on Defendants' Unopposed Motion for Enlargement of

Time Within Which to Respond to the Complaint and Memorandum of Law. Having reviewed

the Motion and Memorandum, it is hereby ORDERED and ADJUDGED:

      1.    Defendants shall have an enlargement of time of twenty (20) days from the date

of this Court's ruling on the unopposed motion to transfer venue to serve their response (by

answer, motion to dismiss, or otherwise) to the Complaint if the unopposed motion to transfer

venue is denied.

      2.    Defendants' response time shall be governed by the transferee court if the

unopposed motion to transfer venue is granted.

TPA#2221143.1

Done and Ordered in Chambers this ___ day of _____, 2006.

_____
District Judge

cc: Chris S. Coutroulis
    Lance A. Harke
    Sara Clasby Engel
    Howard M. Bushman



FILED by _____ D.C.

JUN - 5 2006

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION                    0 6    3 9 2

CASE NO. 06-20709-CIV-JORDAN

DOROTHY FERGUSON,                    )
                                     )
            Plaintiff                )
                                     )
vs.                                  )              FILED
                                     )
ASTRAZENECA PHARMACEUTICALS          )         JUN 1 6 2006
LP, et. al.,                         )
                                     )       U.S. DISTRICT COURT
            Defendants               )      DISTRICT OF DELAWARE
                                     )
_____      )

**ORDER**

The defendants' motion to extend time to respond to the complaint [D.E. 7] IS DENIED AS

MOOT. On May 23, 2006, I granted the defendants' unopposed motion to transfer this case to the

District of Delaware, and the clerk closed this case [D.E. 6].

DONE and ORDERED in chambers in Miami, Florida, this $\leq k$ day of June, 2006.

_____
Adalberto Jordan
United States District Judge

Copy to:      All counsel of record

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF FLORIDA

CLARENCE MADDOX
CLERK OF COURT



0 6   3 9 2

June 13, 2006

United States District Court
District of Delaware
4209 J. CALEB BOGGS FEDERAL BUILDING
844 NORTH KING STREET
WILMINGTON, DE 19801-3519


RE:  *Dorothy Ferguson v. Astrazeneca Pharmaceuticals, et al.*
                                                    Case No. 06-

     20709-CIV-JORDAN

Dear Sir:

In compliance with the Order of Transfer of the Honorable Adalberto
Jordan, U.S. District Judge of 5/24/06, we are forwarding herewith
the court file together with a certified copies of the docket sheet
and transfer Order.

Please acknowledge receipt of the above on the enclosed copy of
this letter.


CLARENCE MADDOX
Clerk of Court

by:
    Steven C. Kalogerakis
    Deputy Clerk

Encl.

FILED
JUN 16 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

| □301 N. Miami Avenue | □299 E. Broward Boulevard | □701 Clematis Street | □301 Simonton Street | □300 S. Sixth Street |
|---|---|---|---|---|
| Room 150 | Room 108 | Room 402 | Room 130 | Ft. Pierce, FL 34950 |
| Miami, FL 33128 | Ft. Lauderdale, FL 33301 | W. Palm Beach, FL 33401 | Key West, FL 33040 | 772-595-9691 |
| 305-523-5100 | 954-769-5400 | 561-803-3400 | 305-295-8100 | |